UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| TASHAYLA C. PAIGE, | ) | |
| | ) | |
| Plaintiff, | ) | Case: 3:23-CV-50053 |
| | ) | |
| v. | ) | Honorable Philip G. Reinhard |
| | ) | |
| WOODWARD, INC., | ) | Magistrate Judge Margaret J. Schneider |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
FRCP 12(b)(6) MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**I.      INTRODUCTION**

The First Amended Complaint ("FAC") arises from a charge of discrimination, harassment, and retaliation that Plaintiff Tashayla C. Paige ("Plaintiff") filed with the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendant Woodward, Inc. ("Defendant"), which employed Plaintiff from November 2021 through her voluntarily resignation on October 20, 2022. (ECF No. 23, ¶¶ 1, 9, 15.)  The FAC alleges Defendant harassed Plaintiff on the basis of her pregnancy in violation of the Pregnancy Discrimination Act of 1978, amending Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("PDA") (Count I); discriminated against Plaintiff on account of her sex and race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII") and 42 U.S.C. § 1981 ("Section 1981") (Counts III, V, and VI); and retaliated against Plaintiff for reporting the harassment and discrimination in violation of the PDA and Title VII (Counts II and IV). (*Id.* at ¶¶ 1-3.)

The FAC is ripe for dismissal because: (i) the FAC does not state that Plaintiff held a contract with Defendant as demanded under Section 1981; (ii) Plaintiff does not assert any adverse employment actions to support her discrimination and retaliation claims, but rather minor

grievances and an alleged constructive discharge that is unsustainable on its face; (iii) the FAC fails to connect her alleged adverse employment actions to any discriminatory intent or protected activity; (iv) Plaintiff's race discrimination claims fail the minimum pleading requirements established by the U.S. Supreme Court decisions in *Ashcroft v. Iqbal* and *Bell Atl. Corp. v. Twombly*; and (v) the FAC does not allege sex discrimination beyond the legal conclusion that she was discriminated against because of her sex. For these reasons, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant respectfully requests this Court dismiss the FAC with prejudice.

## II. RELEVANT FACTS[1]

Defendant hired Plaintiff, an African-American female, on or around November 1, 2021. (*Id.* at ¶ 22.) Within the month, Plaintiff was allegedly the recipient of "racially charged remarks" concerning her fingernails, hair, and work ethic. (*Id.* at ¶¶ 22-24.) Plaintiff allegedly reported these comments to her supervisor, but no action was taken and the comments continued. (*Id.* at ¶¶ 25-26.)

At some point during her employment, Plaintiff became pregnant. (*Id.* at ¶ 27.) Plaintiff alleges that her physician instructed her to "sit as needed" and "take bathroom breaks" in connection with her pregnancy. (*Id.* at ¶¶ 20, 28-29.) Plaintiff alleges that "Defendant was on notice" of these instructions, but still denied Plaintiff a chair to sit in, including at one point taking a chair away from Plaintiff as she sat in it. (*Id.* at ¶¶ 28-29, 31.)

In early 2022, Plaintiff alleges that she was subjected to discrimination on account of her pregnancy. (*Id.* at ¶ 27.) Specifically, Plaintiff alleges that at some point in her employment,

---

[1] Defendant presents these facts solely for purposes of the Motion, and reserves the right to challenge the allegations contained in the FAC outside the context of the Motion.

Defendant ignored a medical emergency (*Id.* at ¶ 30); Defendant's Human Resources department took no action after Plaintiff complained of "disparate treatment" (*Id.* at ¶¶ 32-33); Plaintiff was informed that she worked too slowly (*Id.* at ¶ 35); and her short-term disability payment was late on one occasion (*Id.* at ¶ 38.) In addition, Plaintiff alleges she was subjected to "excessive drug testing" upon her return from medical leave in August 2022, which she claims was "racially motivated." (*Id.* at ¶¶ 36-37.) Plaintiff voluntarily left her position with Defendant on October 20, 2022. (*Id.* at ¶ 40.)[2]

On November 1, 2022, Plaintiff filed her Charge with the EEOC, alleging that she was harassed and discriminated against because of her race and sex. (*Id.* at ¶ 9, and Exhibit A attached thereto.) The EEOC made no determination on its investigation and mailed Plaintiff a Notice of Right to Sue on December 21, 2022. (*Id.* at ¶ 10, and Exhibit B attached thereto.) Nearly 60 days later, Plaintiff filed her complaint. (*Id.* at ¶ 10.) Plaintiff filed the FAC on June 22, 2023.

### III. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As the Supreme Court explained, the plausibility standard is not "a probability requirement," but calls for "more than sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678.

"Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citations omitted).

---

[2] The FAC originally styles Plaintiff's departure as a termination (*Id.* at ¶ 1, stating "Defendant also terminat[ed] Plaintiff's employment"), but later clarifies that she was constructively discharged. (*Id.* at ¶ 40.)

IV.     ARGUMENT

The FAC and all of its counts are deficient, bereft of material allegations, and ultimately fail for multiple independent reasons. *First*, the FAC does not allege Plaintiff was employed pursuant to a contract, and therefore fails to state a claim under Section 1981. *Second*, the FAC's disconnected characterization of Defendant's conduct fails to rise to the level of adverse actions, and the lone exception – constructive discharge – does not remotely approach the high burden established by Seventh Circuit jurisprudence. *Third*, even if Plaintiff properly alleged an adverse employment action (which she has not), she has not sufficiently connected it to any discriminatory animus or alleged protected activities. *Fourth*, Plaintiff's race discrimination claims are conclusory and devoid of even the minimum level of facts such that Plaintiff has not satisfied her pleading obligations under *Iqbal* and *Twombly*. Finally, and *fifth*, the FAC does not allege sex discrimination *of any kind* outside the conclusory allegation that Plaintiff was discriminated against because of her sex. The FAC is therefore ripe for dismissal.

A.     **Count V should be dismissed because Plaintiff does not allege she held a contract**

As an initial matter, Plaintiff's Section 1981 claim should be dismissed at the outset because she has not alleged that she was employed pursuant to a contract. Under Section 1981, a plaintiff must allege the existence of a contract. *Tucker v. Ettleson Hyundai, LLC*, No. 19 C 4334, 2019 WL 6327424, at *1 (N.D. Ill. Nov. 25, 2019) (Durkin, J.) ("a plaintiff must allege the existence of a contract to state a claim under § 1981"); *Adam v. Obama for America*, 210 F. Supp. 3d 979, 986 (N.D. Ill. 2016) ("[N]ot all agreements are contracts[.]"). While the FAC alleges that Plaintiff was hired in November 2021 and that she was an "employee," it fails to specify that she was hired pursuant to a written contract. (*See* ECF No. 23, at ¶¶ 13, 15); *Adam*, 210 F. Supp. 3d at 987 ("[Title VII and Section 1981] have different threshold requirements: Title VII asks whether

4

the plaintiff is an 'employee', whereas Section 1981 asks whether the plaintiff has a 'contractual relationship' with the defendant."). Therefore, Plaintiff has failed this basic pleading requirement, thereby necessitating dismissal. *Tucker*, 2019 WL 6327424, at *1 (dismissing Section 1981 claim for identical reasons).

  **B.**  **Counts I-VI must fail because Plaintiff does not allege that she suffered an adverse employment action**

  In evaluating allegations under Title VII, § 1981, or the PDA, the court should consider whether Defendant treated Plaintiff differently on the basis of her protected characteristic, and whether the discriminatory treatment resulted in a materially adverse employment action. *Gilhooly v. UBS Securities, LLC*, 772 F. Supp. 2d 914, 915-17 (N.D. Ill. 2011) ("To survive a motion to dismiss, the Complaint must also plausibly plead a materially adverse employment action."); *Adam*, 210 F. Supp. 3d at 988 ("To prevail on either a discrimination or retaliation claim under Section 1981 in the employment context, a plaintiff must allege that her employer subjected her to adverse actions."); *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015) ("The legal analysis for discrimination claims under Title VII and § 1981 is identical[.]"). Moreover, to state a claim of retaliation under Title VII, a plaintiff must allege "1) that he engaged in a statutorily protected activity; 2) that he suffered an adverse employment action; and 3) that there was a causal link between the protected activity and the employer's action." *Prince v. Illinois Dept. of Revenue*, 73 F. Supp. 3d 889, 894 (N.D. Ill. 2010) (Kendall, J.). Here, the FAC is deficient under either theory of liability because the majority of Plaintiff's grievances fail to rise to the level of an adverse action, and the lone possible exception – constructive discharge – is a high bar that the FAC does not meet.

*1. The FAC does not allege facts that constitute an adverse employment action*

It is well established within the Seventh Circuit that "not everything that makes an employee unhappy is an actionable adverse action." *Adam*, 210 F. Supp. at 988. Specifically, neither Title VII nor § 1981 protect against "behavior too petty and tepid to constitute a material change in the terms and conditions of [] employment." *Stutler v. Illinois Dept. of Corrections*, 263 F.3d 698, 704 (7th Cir. 2001); *see also id.* (explaining that federal law "is not intended to reach every bigoted act or gesture that a worker might encounter in the workplace.").[3]

Here, in support of Plaintiff's discrimination and retaliation claims, the FAC alleges – at most – minor slights and inconveniences. For example, none of the following are adverse employment actions: allegedly denying Plaintiff an accommodation (ECF No. 23 at ¶¶ 20-21)[4]; failing to react to a non-described medical emergency (*Id.* at ¶ 30); removing a chair from Plaintiff (*Id.* at ¶ 31); not taking action following a single complaint from Plaintiff (*Id.* at ¶ 32); criticizing Plaintiff on her job performance (*Id.* at ¶ 35); and failing to issue Plaintiff a timely short-term disability payment on one occasion. (*Id.* at ¶ 37.) Courts within the Seventh Circuit have routinely rejected as legally insufficient the type of allegations advanced in the FAC. *See e.g., Herron v. DaimlerChrysler Corp.,* 388 F.3d 293, 301 (7th Cir. 2004) (finding that a short delay in an overtime payment did not constitute an adverse employment action); *Parks*, 318 F. Supp. 3d at 1060-64 (dismissing Title VII and Section 1981 claims for failure to assert an adverse employment

---

[3] Instead, an adverse employment action is one which "visits upon a plaintiff 'a significant change in employment status'" such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Parks v. Speedy Title & Appraisal Review Services*, 318 F. Supp. 3d 1053, 1062 (N.D. Ill. 2018).

[4] While the FAC does not allege that Plaintiff ever requested an accommodation, it does state that "Defendant denied Plaintiff [a] medical necessity." (ECF No. 23 at ¶ 28.) Generously interpreting this vague allegation as an accommodation request, Defendant's denial of this request does not rise to the level of an adverse action, which, if true and taken to its logical conclusion, would render any denial of an accommodation an adverse employment action, regardless of merit.

action, where plaintiff alleged she was excessively disciplined, untimely reimbursed for expenses, and where the director of human resources failed to take action following her complaints); *Walker v. JP Morgan Chase Bank, N.A.*, 262 F. Supp. 3d 547, 586 (N.D. Ill. 2017) (concluding that being scrutinized is not an actionable adverse employment action). Indeed, the FAC does not allege Plaintiff ever received written discipline, a demotion, or any other job alteration from any of this conduct. *Stutler*, 263 F.3d at 703 ("[T]he adverse action must materially alter the terms and conditions of employment."); *Adam*, 210 F. Supp. 3d at 988-89 (explaining that "impolite" or "humiliating" conduct does not alter the plaintiff's wealth or career prospects sufficient to constitute an adverse employment action).

To be sure, courts have found drug testing can be actionable under Title VII in some circumstances. *See Stockett v. Muncie Indiana Transit System*, 221 F.3d 997, 1001-02 (7th Cir. 2000) (finding no adverse action where employer required worker to submit to drug test after he exhibited signs of being under the influence). But the underlying reasoning for doing so is noticeably absent here. As in *Stockett*, the FAC does not allege that Defendant's decision to subject Plaintiff to drug testing following her return from medical leave was non-compliant with its regular and legitimate practices. Instead, Plaintiff simply concludes that this routine employment decision was "racially motivated." (ECF No. 23, at ¶ 37.) Accordingly, it cannot save Plaintiffs' pleading deficiencies under Title VII or Section 1981.

By failing to allege an adverse action, Plaintiff has not satisfied her *prima facie* burden to plead discrimination or retaliation, warranting dismissal on this basis alone.

    2.  *The FAC does not allege facts sufficient to constitute constructive discharge*

The FAC might charitably be read to attribute Plaintiff's alleged constructive discharge as the adverse action taken in connection with Defendant's alleged discrimination and in response to Plaintiff's alleged protected activities. But this position is without merit. "The term 'constructive

discharge' refers to the situation in which an employee is not fired but quits, but in circumstances in which the working conditions have made remaining with this employer simply intolerable. . . [T]he test for intolerable working conditions is whether a reasonable employee would have concluded that the conditions made remaining in the job unbearable." *Brown v. N. Illinois Univ.*, No. 15 C 50154, 2015 WL 9182797, at *3 (N.D. Ill. Dec. 17, 2015) (Reinhard, J.) (internal citations omitted) (dismissing constructive discharge claim); *see also Patton v. Indianapolis Public Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002) (affirming plaintiff had no hostile work environment claim – a less-demanding standard than constructive discharge – where she alleged her immediate supervisor was rude, ignored her work-related suggestions, and subjected her to criticism after taking leave).

The FAC does not meet this high bar. Even accepting Plaintiff's allegations as true, none of it remotely approaches the type of egregious conduct that the case law demands to support a constructive discharge claim. *Compare Taylor v. Western and Southern Life Ins.*, 966 F.2d 118, 1191 (7th Cir. 1992) (holding that a reasonable person would have felt compelled to resign where supervisor placed a pistol against an employee's head, took a picture, and circulated it with the caption "this is what a nigger looks like with a gun to his head") *and Snider v. Consolidation Coal Co.*, 973 F.2d 555, 557 (7th Cir. 1992) (finding plaintiff's working conditions intolerable where her disputed sexual relationship with her supervisor led to her suicide attempt), *with Gilhooly*, 772 F. Supp. 2d at 917-18 (finding plaintiff's allegation of constructive discharge to be the only adverse action she alleged; disagreeing that constant criticism gives rise to a plausible inference that plaintiff's workplace conditions would have compelled a reasonable person to resign; and dismissing the complaint), *and Barker v. YMCA of Racine*, 18 Fed. App'x 394, 398-99 (7th Cir. Aug. 27, 2001) (affirming that neither a poor performance appraisal; emails containing threats of

8

termination; or allegations that plaintiff's supervisors shunned her were egregious enough to support a constructive discharge claim). Ultimately, the FAC wholly fails to assert that Plaintiff suffered any adverse employment action, rendering Counts I-VI incomplete and ripe for dismissal.

      **C.**    **The FAC does not connect any adverse actions Plaintiff allegedly suffered to a discriminatory animus or protected activity**

Even assuming the FAC has sufficiently alleged an adverse action (which it has not), it fails to establish a causal link between the adverse conduct and any discriminatory animus or protected activity to prevail on a discrimination or retaliation claim.[5] *Prince v. Illinois Dept. of Revenue*, 73 F. Supp. 3d 889, 894 (N.D. Ill. 2010). *Prince* is instructive. There, the plaintiff requested and received some, but not all, disability-related accommodations and medical leaves of absences. *Id.* at 892. After complaining, the plaintiff was denied promotions and pay increases, disciplined, scrutinized more than his co-workers, and ultimately suspended. *Id.* Dismissing his claims under the Americans with Disabilities Act and Title VII, the court explained that the plaintiff "did not clearly explain the basis for his belief (beyond suspicious timing) that there was a causal link between his complaints of discrimination and the allegedly retaliatory actions that were taken against him." *Id.* at 894.

In *Gilhooly*, 772 F. Supp. 2d at 915, the plaintiff sought relief under Title VII for sex discrimination where her supervisors examined her work with greater scrutiny; blamed her for the mistakes of others; transferred her to an assignment for which she had no training; and criticized and harassed her for poor performance. Dismissing her complaint, the court explained that the plaintiff's failure to point to similarly-situated men who were treated more favorably was fatal to

---

[5] Plaintiff's allegedly protected activities appear to be potentially requesting an accommodation (ECF No. 23, ¶¶ 20-21); complaining to human resources regarding "disparate treatment" (*Id.* at ¶ 32); and taking medical leave (*Id.* at ¶ 36).

her *prima facie* case under *McDonnell Douglas*. *Id.* at 916. Likewise, the conduct that she allegedly suffered from on account of her sex "suggest[ed] nothing about the defendant's discriminatory intent," thereby failing to paint a "convincing mosaic of discrimination" and providing insufficient detail to create a plausible inference of discriminatory intent. *Id.* at 917; *see also Peppers v. Benedictine University*, Case No. 1:17-CV-03387, 2017 WL 6816734, at *4 (N.D. Ill. Dec. 12, 2017) ("Plaintiff fails to allege any facts that would suggest the mistreatment described was motivated by Plaintiff's sex. This omission alone dooms Plaintiff's claims.")

Plaintiff's allegations are similarly lacking. While the FAC outlines a series of minimally inconvenient actions allegedly taken against Plaintiff, it fails to connect that conduct to her request for an accommodation, complaint to human resources, or use of leave, or how those actions are tied to Plaintiff's protected characteristics. *See Cooper v. Dart*, Case No. 19-CV-05349, 2023 WL 1970694, at *5 (N.D. Ill. Feb. 13, 2023) (dismissing complaint that drew "no connection between Plaintiff's suspension or termination and his [protected class]. It is as though Plaintiff begins with the conclusion that he was the victim of discrimination and then tries to work backward to show how. Such mere legal conclusions are, however, typically insufficient to survive a motion to dismiss."). For example, as in *Prince*, the FAC does not assert that the people to whom Plaintiff complained about her disparate treatment (Human Resources) contributed to the conduct that Plaintiff alleges constitute adverse actions. *See* ECF No. 23, at ¶ 32; *Prince*, 73 F. Supp. 3d at 894 ("Here, however, [Plaintiff] does not allege that the people to whom he complained about his discrimination had anything to do with his suspension . . . As a result, he has failed to state a claim for retaliation[.]").

Plaintiff therefore has not established the causal link between the allegedly adverse conduct and her race, sex, pregnancy or protected expressions. The FAC should be dismissed accordingly.

10

    **D.**    **Counts V and VI offer exclusively legal conclusions and fail to connect Defendant's allegedly racist comments with any alleged adverse employment action**

Plaintiff's race discrimination claims are also insufficiently plead. While her pleading obligations are minimal, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.")

The FAC's Title VII and Section 1981 claims do just that. Plaintiff does not put forth even the minimal level of specificity, relying instead upon conclusory allegations that Defendant's alleged comments were "racially-charged," "stereotypical," and made "on account of [Plaintiff's] race, African American." (ECF No. 23, at ¶¶ 23-24.) However, mere allegations of comments directed at Plaintiff and declared to be "racially charged" are precisely the type of threadbare conclusions that are routinely rejected under Rule 12(b)(6). *See Estes v. McEnerny*, Case No. 14 C 1374, 2015 WL 6121529, *4 (N.D. Ill. Oct. 14, 2015) (dismissing civil rights conspiracy claim because "mere invocation of the word 'conspiracy' followed by legal conclusions will not suffice to state a claim under Rule 8."); *Gilhooly*, 772 F. Supp. 2d at 916-17 (dismissing Title VII claim because "bare assertions alleging adverse actions by [Defendant] toward [Plaintiff] solely 'because of her gender' are nothing more than a 'formulaic recitation of the elements' of a sex discrimination claim."); *I.S. by & through Disla v. Binghamton City Sch. Dist.*, 486 F. Supp. 3d 575, 607 (N.D.N.Y. 2020) (finding plaintiffs failed to plead facts plausibly suggesting discrimination despite asserting that comments were "racially motivated").

The FAC also fails to link the allegedly discriminatory conduct to any adverse action. The Seventh Circuit has previously held that "[a] handful of episodes of yelling and stray racist remarks cannot sustain a claim of racial harassment or create an inference that race was the reason" for

termination. *Reed v. Ewald Automotive Group, Inc.*, 420 Fed. App'x 613, 618 (7th Cir. 2011); *Galvin v. Catholic Bishop of Chicago*, 863 F. Supp. 770, 779 (N.D. Ill. 1994) (finding that a stray remark bolstering a gender stereotype made over a year prior to the plaintiff's termination "is simply not probative of discrimination.") And under Section 1981, "[t]o give rise to a plausible inference of racial harassment or discrimination, the objectionable language must be used contemporaneously with the alleged wrongful conduct . . . or must be causally related to the decision-making process leading up to that conduct." *Naserallah v. Full Circle Terminal, LLC*, Case No. 19-CV-232, 2021 WL 1176046, *3 (N.D. Ill. Mar. 29, 2021) (dismissing Section 1981 claim for failure to link the defendants' use of racial epithets to the adverse action).

The FAC offers no explanation or suggestion that the allegedly "racially charged remarks" made in November 2021 are connected to any of the allegedly adverse actions she endured, including her alleged constructive discharge one year later or the "excessive drug testing" that she experienced upon returning from medical leave but insists was "racially motivated" and retaliatory.[6] (ECF No. 23, at ¶ 37.) Overall, Plaintiff attempts to shoehorn comments made to her under Title VII and Section 1981's protection by labeling them "racially charged," and then asks this Court to make the inferential leap that actions taken upon her return from medical leave and her subsequent resignation are connected. Neither withstand Plaintiff's pleading obligations and should be dismissed.

### E. Plaintiff alleges, but offers no details, supporting a viable sex discrimination claim

Finally, the FAC does not allege sex discrimination *of any kind*. Plaintiff does not, for example, allege that she endured derogatory comments, was inappropriately touched, or treated

---

[6] Notably, Plaintiff does not assert any retaliation claim connected with her alleged complaint of race discrimination.

differently than male co-workers in any capacity. Indeed, a thorough examination of the FAC does not reveal a single allegation that Plaintiff suffered anything – good or bad – related to her status as female. Far from connecting any perceived unfairness to her sex, Plaintiff has not even bothered to allege that she suffered *any* mistreatment at all, apart from conduct that she insufficiently attributes to Defendant's race and pregnancy discrimination.[7] To this end, Plaintiff's sex discrimination claim falls even shorter than the plaintiff's claim in *Gilhooly*, who the court derided for her conclusory allegation that she was subjected to greater scrutiny and terminated "because of [her gender]," but who at least put forth some type of mistreatment. *Gilhooly*, 772 F. Supp. 2d at 916-17. While Plaintiff's pleading requirements are low, she must offer *something* in the way of a plausible claim in order to satisfy *Twombly* and *Iqbal* and place Defendant's on notice of the claims against it. Instead, Plaintiff simply declares she suffered sex discrimination and was retaliated against and moves on, representing the type of formulaic recitation of facts that the Supreme Court has denounced, and demanding dismissal of Counts III and IV.

## V. CONCLUSION

**WHEREFORE**, Defendant Woodward, Inc. respectfully requests that this Court enter an Order: (i) granting the Motion; (ii) dismissing the First Amended Complaint in its entirety with prejudice; and (iii) granting such other relief as this Court deems just and proper.

---

[7] Lest there be any doubt that Plaintiff does not intend her pregnancy to comprise her sex discrimination claims, she clearly differentiates between the two on multiple occasions throughout the FAC. (*See* ECF No. 23, at ¶ 21 (". . . Defendant subjected Plaintiff to different terms . . . because of her pregnancy, *sex*, and race.") and ¶ 42 ("[Plaintiff] made her reports of discrimination and harassment on the basis of her *sex*, pregnancy, and/or race.") (emphasis added).)

        Respectfully submitted,

        Defendant Woodward, Inc.

**Dated: July 6, 2023**        By:   */s/ Gerald Maatman, Jr.*
                Gerald L. Maatman, Jr.

Gerald L. Maatman, Jr.
gmaatman@duanemorris.com
Zev Grumet-Morris
zgrumetmorris@duanemorris.com
DUANE MORRIS LLP
190 South LaSalle Street, Suite 3700
Chicago, Illinois 60603-3433
Telephone: 312.499.6700

Counsel for Defendant

14

## **CERTIFICATE OF SERVICE**

      I, Gerald L. Maatman, Jr., counsel for Defendant, do hereby certify that, on July 6, 2023, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will provide notice to the following counsel of record:

Alexander J. Taylor
Sulaiman Law Group Ltd.
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
(630) 575-8181
ataylor@sulaimanlaw.com

      *Attorney for Plaintiff*

                          By: /s/ Gerald L. Maatman, Jr.
                                   Gerald L. Maatman, Jr.